UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTINE GELSLEICHTER, Individually and On Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| v. | DEMAND FOR JURY TRIAL |
| AMERICAN RENAL ASSOCIATES HOLDINGS, INC., JOSEPH A. CARLUCCI, and JONATHAN L. WILCOX, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff Christine Gelsleichter ("Plaintiff"), individually and on behalf of all other persons similarly situated, by her undersigned attorneys, for her complaint against Defendants, alleges the following based upon personal knowledge as to herself and her own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through her attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding American Renal Associates Holdings, Inc. ("American Renal" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired American Renal securities: (1) pursuant and/or traceable to American Renal's false and misleading Registration Statement and Prospectus issued in connection with the Company's initial public offering on or about April 21, 2016 (the "IPO" or the "Offering"); and/or (2) on the open market between April 21, 2016 and August 18, 2016, both dates inclusive, seeking to recover compensable damages caused by Defendants' violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act") ("the Class").

2.      American Renal operates as a dialysis services provider in the United States focused exclusively on joint venture partnerships with physicians.  The Company, through its subsidiaries, owns and operates kidney dialysis facilities for patients suffering from chronic kidney failure or end stage renal disease ("ESRD").  As of March 31, 2016, it owned and operated 194 dialysis clinics in 25 states and the District of Columbia.

3.      The Company was formerly known as C.P. Atlas Holdings, Inc. and changed its name to American Renal Associates Holdings, Inc. in February 2011.  American Renal Associates Holdings, Inc. was founded in 1999 and is headquartered in Beverly, Massachusetts.  The Company's stock trades on the NYSE under the ticker symbol "ARA."

4.      On or about April 21, 2016, American Renal completed its IPO, issuing 8.625 million shares of common stock and raising net proceeds of approximately $189.75 million.

5.      Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) American Renal was engaged in a fraudulent scheme to steer patients away from qualified-for Medicare and Medicaid plans into

2

more expensive Affordable Care Act ("ACA") plans to obtain greater reimbursement for the Company's dialysis services; (ii) the foregoing scheme was in violation of federal and state laws; and (iii) as a result of the foregoing, American Renal's public statements were materially false and misleading at all relevant times.

6.      On July 1, 2016, three insurance companies filed a lawsuit against American Renal and an affiliated entity in the United States District Court for the Southern District of Florida, alleging that American Renal was engaged in a "fraudulent and illegal scheme" that involved persuading patients who qualified for Medicare or Medicaid coverage to enroll in commercial healthcare plans and then putting those patients in touch with an American Renal-patronized charity that would pay the patients' insurance premiums in full or in part.  As Medicaid and Medicare provide for only predetermined reimbursement rates for dialysis services, the suit alleges that American Renal would thus receive much larger reimbursements from the ACA insurer as a commercial payor than it would have from Medicare or Medicaid coverage.

7.      On news of the lawsuit, American Renal's stock price fell $2.82 per share, or 9.88%, to close at $25.71 on July 5, 2016, the next trading day.

8.      On August 18, 2016, the Centers for Medicare and Medicaid Services (the "Agency"), a federal agency within the U.S. Department of Health and Human Services, announced that it had sent warning letters to all dialysis centers that participate in the federal Medicare program.  The Agency also stated that it is weighing financial penalties on providers found to have directed people eligible for Medicare into ACA plans instead—as American Renal is alleged to have done.

9.      On this news, American Renal's share price fell $2.31, or 10.44%, to close at $19.81 on August 19, 2016.

3

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. §78aa).

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as Defendant American Renal's common stock trades on the NYSE, located within this District.

14.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

15.     Plaintiff purchased or otherwise acquired American Renal common stock as described in the attached certification, incorporated herein by reference, and was damaged by the revelation of the alleged corrective disclosure.

16.    Defendant American Renal is incorporated in Delaware, and the Company's principal executive offices are located at 500 Cummings Center, Suite 6550, Beverly, Massachusetts 02459.  American Renal's stock trades on the NYSE under the ticker symbol "ARA."

17.    Defendant Joseph A. Carlucci ("Carlucci") is the Company's co-founder and has served at all relevant times as the Company's Chief Executive Officer, Chairman of the Board, and Chairman of the Compliance Committee.

18.    Defendant Jonathan L. Wilcox ("Wilcox") has served at all relevant times as the Company's Chief Financial Officer and Vice President.

19.    The Defendants described in ¶¶ 17-18 are sometimes hereinafter collectively referred to as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

20.    American Renal operates as a dialysis services provider in the United States focused exclusively on joint venture partnerships with physicians.  The Company, through its subsidiaries, owns and operates kidney dialysis facilities for patients suffering from chronic kidney failure or ESRD.  As of March 31, 2016, it owned and operated 194 dialysis clinics in 25 states and the District of Columbia.

21.    On August 31, 2015, American Renal filed a draft registration statement with the SEC in connection with the Company's IPO.  The draft registration statement was subsequently amended several times, and the final amended registration statement was filed with the SEC on April 20, 2016 (collectively, the "Registration Statement").

22.     The Registration Statement contained a preliminary prospectus.    The final prospectus (the "Prospectus") was filed with the SEC on April 20, 2016.

23.     On April 20, 2016, the SEC declared the Registration Statement and Prospectus effective, and American Renal's stock began trading on the NYSE on April 21, 2016.

24.     On or about April 26, 2016, American Renal completed its IPO, issuing 8.625 million shares of common stock and raising net proceeds of approximately $189.75 million.

**The Alleged False and Misleading Statements**

25.     On April 20, 2016, American Renal filed its final Prospectus with the SEC, which forms part of the Registration Statement and which the SEC declared effective as of April 20, 2016.  In the Prospectus, American Renal stated, in relevant part:

**Our Competitive Strengths**

Our competitive strengths are well-aligned with an evolving healthcare services market that demands high-quality patient care, physician-centered care management and continuous clinical and administrative improvement and efficiency.

. . .

***Exclusive Focus on the JV Model Delivers Compelling Value Proposition for Patients, Physicians and Payors***

We believe our results reflect the compelling value proposition of our JV model:

. . .

For Payors

•     ***Robust Compliance***:   Adherence to stringent billing, reimbursement, and compliance procedures.

***Effectiveness of our JV Model in Delivering High Performance***

We meet or exceed the core measures established by CMS to promote high-quality services in outpatient dialysis facilities. As an example, we have demonstrated

strong performance in the ESRD Quality Incentive Program ("QIP"), which changes the way Medicare pays for the treatment of patients with ESRD by linking a portion of payment directly to facilities' performance on CMS core measures. The ESRD QIP reduces future payments to dialysis facilities that do not meet or exceed certain performance standards in the measurement year. The maximum payment reduction CMS can apply to any facility is 2% of all payments for services performed by the facility in a given year. Since the inception of the QIP program in 2010, the impact of payment reductions on our revenues has not exceeded 0.1% of our revenues in any year. Based on our performance in measurement years 2013 and 2014, only 1.4% and 1.2% of our clinics were penalized by CMS for payment years 2015 and 2016, respectively, compared to 5.6% and 5.5% of dialysis clinics across the United States penalized by CMS for the same periods, respectively, according to publicly available data from CMS. ***We believe our performance is driven by a culture of compliance and the advantages of our JV model***.

. . .

***If we fail to adhere to all of the complex federal, state and local government regulations that apply to our business, we could suffer severe consequences that could adversely affect our operating results and financial condition.***

Our dialysis operations are subject to extensive federal, state and local government regulations, all of which are subject to change. These government regulations currently relate, among other things, to:

• government healthcare program participation requirements;

• requirements related to reimbursement for patient services, including Medicare and Medicaid reimbursement rules and regulations, rules addressing the priority of payors, signature and documentation requirements, and coding requirements;

. . .

***We are subject to CMS certification, claims processing requirements and audits, and any adverse findings in a CMS review could adversely affect our operating results and financial condition.***

The Medicare and Medicaid reimbursement rules related to claims submission, clinic and professional licensing requirements, cost reporting and payment processes impose complex and extensive requirements upon dialysis providers. A violation or departure from these requirements may result in government audits, lower reimbursements, overpayments, recoupments or voluntary repayments, and the potential loss of certification to participate in the Medicare and Medicaid program. CMS has increased the frequency and intensity of its certification inspections of dialysis clinics.

. . .

### State False Claims Laws

Many states have adopted their own false claims laws, which generally mirror the False Claims Act and are designed to prevent false claims from being submitted to state healthcare programs and commercial insurers. Violations of these laws may result in monetary penalties or other sanctions for the violator. ***We believe that we are in material compliance with these laws and regulations.*** However, violation of these laws and the imposition of related consequences could have a materially adverse impact on our operations.

(Emphases added.)

26.     The Registration Statement, which incorporated the Prospectus, was signed by the Individual Defendants.

27.     On May 16, 2016, American Renal filed a Quarterly Report on Form 10-Q with the SEC, announcing the Company's financial and operating results for the quarter ended March 31, 2016 (the "Q1 2016 10-Q").  For the quarter, the Company reported net income of $22.56 million, or $0.16 per diluted share, on revenue of $173.55 million, compared to net income of $18.58 million, or $0.13 per diluted share, on revenue of $150.34 million for the same period in the prior year.

28.     The Q1 2016 10-Q contained signed certifications pursuant to the Sarbanes-Oxley Act of 2002 (the "Sarbanes-Oxley Act") by the Individual Defendants, stating that the financial information contained in the Q1 2016 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

29.     The statements referenced in ¶¶ 25-28 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) American Renal was engaged in a fraudulent scheme to steer patients away from qualified-for Medicare and Medicaid

plans into more expensive ACA plans to obtain greater reimbursement for the Company's dialysis services; (ii) the foregoing scheme was in violation of federal and state laws; and (iii) as a result of the foregoing, American Renal's public statements were materially false and misleading at all relevant times.

### The Truth Begins To Emerge

30.     On July 1, 2016, three insurance companies filed a lawsuit against American Renal and an affiliated entity in the United States District Court for the Southern District of Florida, under style of *UnitedHealthCare of Florida, Inc. et al. v. American Renal Associates Holdings, Inc. et al.*, No. 16-cv-81180-KAM, alleging violations of Florida's Deceptive and Unfair Trade Practices Act, as well as fraud, negligent misrepresentation, unjust enrichment, tortious interference with contract, civil conspiracy to obtain funds in violation of Florida's Patient Brokering Act, Florida's Anti-Kickback Statute, and Florida's insurance fraud statute.  The lawsuit alleges that American Renal engaged in a "fraudulent and illegal scheme" that involved persuading patients who qualified for Medicare or Medicaid coverage to enroll in commercial healthcare plans and then putting those patients in touch with an American Renal-patronized charity that would pay the patients' premiums in full or in part.  As Medicaid and Medicare provide for only predetermined reimbursement rates for dialysis services, the suit alleges that American Renal would thus receive much larger reimbursements from the ACA insurer as a "commercial payor" than it would have from Medicare or Medicaid coverage.

31.     On news of the lawsuit, American Renal's stock price fell $2.82 per share, or 9.88%, to close at $25.71 on July 5, 2016, the next trading day.

32.     On August 18, 2016, the Centers for Medicare and Medicaid Services announced that the Agency had sent warning letters to all dialysis centers that participate in the federal

Medicare program. The Agency also stated that it is weighing financial penalties on providers found to have directed people eligible for Medicare into ACA plans instead—as American Renal is alleged to have done.

33. On this news, American Renal's share price fell $2.31, or 10.44%, to close at $19.81 on August 19, 2016.

34. As a result of Defendants' false and/or misleading statements, American Renal securities traded at inflated prices. However, after disclosure of Defendants' false and/or misleading statements, American Renal's stock suffered a precipitous decline in market value, thereby causing significant losses and damages to Plaintiff and other Class members.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class (as defined *supra* at ¶ 1). Excluded from the Class are defendants and their family members, directors and officers of American Renal and their families and affiliates.

36. The members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. American Renal has more than 24 million shares of stock outstanding, owned by hundreds or thousands of persons.

37. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual Class members include:

        (a)      Whether the Securities Act was violated by defendants;

        (b)      Whether the Exchange Act was violated by defendants;

(c)     Whether defendants omitted and/or misrepresented material facts;

(d)     Whether defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

(e)     Whether defendants knew or recklessly disregarded that their statements were false and misleading;

(f)     Whether the price of American Renal common stock was artificially inflated; and

(g)     The extent of damage sustained by Class members and the appropriate measure of damages.

38.     Plaintiff's claims are typical of those of the Class because plaintiff and the Class sustained damages from defendants' wrongful conduct.

39.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

40.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD ON THE MARKET

41.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts;

(b)     The omissions and misrepresentations were material;

11

(c)     The Company's stock traded in an efficient market;

(d)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's stock; and

(e)     Plaintiff and other members of the Class purchased American Renal common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

42.     At all relevant times, the market for American Renal's common stock was efficient for the following reasons, among others:

(a) As a regulated issuer, American Renal filed periodic public reports with the SEC; and

(b) American Renal regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services As a result of the foregoing, the market for American Renal's securities promptly digested current information regarding American Renal from all publicly available sources and reflected such information in American Renal's stock price.  Under these circumstances, all purchasers of American Renal's securities at relevant times suffered similar injury through their purchases of American Renal's securities at artificially inflated prices, and a presumption of reliance applies.

## COUNT I
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     Defendants carried out a plan, scheme and course of conduct which was intended to aid and did: (1) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (2) cause Plaintiff and other members of the Class to purchase American Renal's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, each of the Defendants took the actions set forth herein.

45.     Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for American Renal securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business and future prospects of American Renal as specified herein.

47.     These Defendants employed devices, schemes, and artifices to defraud while in possession of material adverse non-public information, and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of American Renal's value and performance and continued substantial growth, which included the making of, or participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about American Renal and its business operations and future

13

prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business that operated as a fraud and deceit upon the purchasers of American Renal securities.

48.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (1) the Individual Defendants were high-level executives, directors, and/or agents at the Company at all relevant times and members of the Company's management team or had control thereof; (2) each of these Defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's business prospects and operations; (3) each of these Defendants enjoyed significant personal contact and familiarity with the other Defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's operations and business projects at all relevant times; and (4) each of these Defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

49.     Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such Defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing the Company's flawed manufacturing processes, thereby artificially inflating price of its securities. As demonstrated by Defendants' omissions and misstatements of the Company's business strategy, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such

knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of American Renal securities was artificially inflated. In ignorance of the fact that market prices of American Renal's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by Defendants but not disclosed in public statements by Defendants, Plaintiff and the other members of the Class acquired American Renal securities at artificially high prices and were or will be damaged thereby.

51.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the Company's flawed manufacturing processes, which was not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their American Renal securities, or, if they had acquired such securities, they would not have done so at the artificially inflated prices that they paid.

52.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

53.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities.

54.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II
### Violation of Section 20(a) of the Exchange Act Against the Individual Defendants

55.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

56.     The Individual Defendants acted as controlling persons of American Renal within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, agency, ownership and contractual rights, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to have been misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

57.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

58.     As set forth above, American Renal and the Individual Defendants each violated Section 10(b), and Rule 10b-5 promulgated thereunder, by their acts and omissions as alleged in this Complaint.

59.     By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities.

60.     This action was filed within two years of discovery of the fraud and within five years of each Plaintiff's purchases of securities giving rise to the cause of action.

**COUNT III**
**Violation of Section 11 of**
**The Securities Act Against All Defendants**

61.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

62.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. §77k, on behalf of the Class, against the Individual Defendants.

63.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

64.     American Renal is the registrant for the IPO. Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

65.     As issuer of the shares, American Renal is strictly liable to Plaintiff and the Class for the misstatements and omissions.

66.     None of the Individual Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

67.     By reasons of the conduct herein alleged, each Individual Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

68.     Plaintiff acquired American Renal securities pursuant and/or traceable to the Registration Statement for the IPO.

69.     Plaintiff and the Class have sustained damages. The value of American Renal securities has declined substantially subsequent to and due to the Individual Defendants' violations.

**COUNT IV**
**Violation of Section 15 of**
**The Securities Act Against the Individual Defendants**

70.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

71.     This count is asserted against the Individual Defendants and is based upon Section 15 of the Securities Act.

72.     Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of American Renal within the meaning of Section 15 of the Securities Act. Individual Defendants had the power and influence and exercised the same to cause American Renal to engage in the acts described herein.

73.     Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

18

By virtue of the conduct alleged herein, the Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

*****

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D.      Such other and further relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  August 31, 2016

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Marc C. Gorrie
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone:  (212) 661-1100
Facsimile:  (212) 661-8665
Email:  jalieberman@pomlaw.com

19

ahood@pomlaw.com
mgorrie@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
1999 Avenue of the Stars
Suite 1100
Telephone: 1-800-977-7401
Fax: 1-800-536-0065
Email: michael@goldberglawpc.com
Email: brian@goldberglawpc.com

*Attorneys for Plaintiff*

# Plaintiff's Certification

I, Christine Gelsleichter, certify that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not purchase the security that is the subject of the complaint at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff's transactions in the security that is the subject of the complaint during the class period specified in the complaint are as follows:

I bought 100 shares on 04/27/2016 at $28.10

5. Plaintiff has not sought to serve, or served, as a representative party on behalf of a class under this title during the 3-year period preceding the date on which this certification is signed, except as follows:

6. Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond the plaintiff's pro rata share of any recovery, except as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 8/22/2016





REDACTED

**AMERICAN RENAL ASSOCIATES HOLDINGS, INC (ARA)**                    **Gelsleichter, Christine**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHS/UTS | PRICE PER SH/UT |
|------|------------------|-------------------|-----------------|
| 4/27/2016 | Purchase | 100 | $28.1000 |